189 So.2d 536 (1966)
COOK MOTOR COMPANY, a Florida Corporation, and Florida Automobile Dealers Self-Insurers Fund, Appellants,
v.
W.C. VAUGHN, Appellee.
No. G-517.
District Court of Appeal of Florida. First District.
August 23, 1966.
*537 Logue, Bennett & Williams, Panama City, for appellants.
Isler & Welch, Panama City, for appellee.
RAWLS, Chief Judge.
Plaintiffs Cook Motor Company and its Workmen's Compensation carrier, Florida Automobile Dealers Self-Insurers Fund, have appealed a final judgment based upon an order granting defendant W.C. Vaughn's motion for summary judgment.
On February 22, 1961, Celan E. McClain, an employee of Cook Motor Company, was injured in an automobile accident by the negligence of W.C. Vaughn. McClain applied for and received workmen's compensation benefits in the sum of $5,415.28. On April 19, 1961, he filed suit in his own name against Vaughn and in due course the workmen's compensation carrier was notified of that suit. The carrier did not file in the suit notice of payment of compensation benefits but the carrier did write a letter to one "Billy" Vaughn stating that he was "on notice of our intent to exercise our subrogation rights." This letter was returned marked "addressee unknown." By virtue of a stipulation of the parties, final judgment in the sum of $5,000 was entered on October 3, 1961, in favor of the injured employee who did not make application to the court for equitable distribution. Almost two years later the employer and its workmen's compensation carrier instituted the present suit to recover on the subrogation claim. The trial judge granted defendant Vaughn's motion for summary judgment and entered final judgment. Plaintiffs appealed.
Appellants pose a single question for our consideration. Is a workmen's compensation insurance carrier barred on its claim for subrogated benefits paid to an employee by a final judgment in a suit filed by the employee against the third party tort-feasor, where the carrier does not file in said suit the notice of payment of compensation benefits under Florida Statute 440.39(3) (a), F.S.A., and where, at the time of settlement of the employee's claim against the third party tort-feasor, the latter had knowledge that the employee was injured in the course of his employment and that workmen's compensation benefits had been paid?
Appellants take the position that the controlling principle is that stated in a line of cases which hold that a settlement between the injured employee and the third party tort-feasor does not impair the employer's or the carrier's subrogation rights where the third party tort-feasor had actual notice that the injured employee was *538 injured in the course of his employment or was receiving workmen's compensation benefits. In such cases it has been held that the employer or carrier, as the case may be, could maintain a suit against the third party tort-feasor since the injured party had not done so, and the plea of settlement or unconditional release was not a bar to such action because knowledge that the employee was injured in the course of his employment cast upon the negligent party statutory notice of the employee's subrogation interests.[1]
Prior to 1951 the employee was required to make an election to either take workmen's compensation or pursue his action at law against the third party tort-feasor. The employee's election to take compensation benefits operated as an assignment to the employer or his insurance carrier to the right of the injured employee against the third party tort-feasor. The carrier could then sue the third party and out of its judgment get complete reimbursement including expenses before paying the injured employee any balance remaining. In such cases the employee had no control over the suit and was at the mercy of the workmen's compensation carrier, which could also be the liability carrier for the third party tort-feasor. In 1951 the legislature amended Section 440.39, Florida Statutes, F.S.A. by granting to the employee an opportunity to control his lawsuit. By that amendment the injured employee was afforded the right to collect workmen's compensation benefits and at the same time institute suit against a third party tort-feasor. If the injured employee filed suit, the employer or his insurance carrier had the right to file in that suit a notice of payment of compensation benefits, and the same by operation of law constituted a lien upon any judgment recovered to the extent that the court determined to be their pro rata share for the benefits paid. This 1951 amendment, which is retained in the statutes today, gave the injured employee the right to control his own law suit against the third party tort-feasor and provided for limited subrogation on an equitable basis. The compensation insurer has no right of subrogation except as granted by statute, therefore in order for it to avail itself of the benefits conferred by statute, it must comply with the rules, regulations, burdens and conditions provided by law.[2] The conditions prerequisite for subrogation in such cases are those set forth in the first paragraph under subsection 440.39(3)  that is, filing in the suit notice of payment of compensation and serving notice of payment of compensation upon all parties to the suit.
Subsection 440.39(4) permits the carrier to institute suit if the injured employee fails to bring suit against a third party within one year after the cause of action has accrued, and from any judgment recovered, the carrier may retain full reimbursement for benefits paid, present value of future compensation payments, and court costs including attorney's fees which are to be prorated. Thus, under the 1951 Amendment the carrier's right to bring an action depends solely upon the failure of the injured employee to do so. Likewise, the carrier's right to apply the judgment first toward full reimbursement for its compensation expenditures depends upon the same condition, for if the employee instituted the action, the carrier would then be entitled to only the limited subrogation provided in subsection 440.39(3). At this point it should be noted that the three cases relied upon by the appellant  Dickerson, Dade County, and Russell  were cases brought under subsection 440.39(4), whereas in the instant case the third party tort-feasor had already been subjected to suit by the injured employee.
*539 It should also be noted that prior to 1959 the statute did not make any specific provision for subrogation in the proceeds derived from a settlement between the injured employee and the third party tort-feasor. This void in the statute was the subject of much litigation. The early decision in the case of Sweat v. Allen, 1941,[3] held that the third party tort-feasor who had settled with the injured employee could be sued by the employer's compensation carrier, but he could not be called upon to pay again what he had already paid. If the third party had settled for less than his actual liability, he still remained liable to the employer or his carrier for the excess up to the amount allowed by law. The 1951 Amendment to the act did not elaborate upon the situation. In fact, the Dickerson case set forth the usual holdings in states wherein the statutes contain no provision relating to the rights of the parties when the employee settles the claim. There the Second District Court of Appeal stated:[4]
"In what appears to be a majority of the states, the employee is allowed to make the settlement, and still collect compensation, but the employer is not thereafter precluded from recovering from the third party the amount it must pay, in spite of the settlement."
* * * * * *
"* * * [T]he conclusion we reach is that the release or settlement without notice to the employer or his carrier does not affect the rights of the employer or insurer to proceed against the third party the same as if such settlement had not been made."
and the Third District Court of Appeal in Dade County v. Michigan Mutual Liability Company stated:[5]
Therefore the settlement made with knowledge that Mr. Gall did not own his entire claim of action was ineffective."
These conclusions seem to imply that the tort-feasor's knowledge that the injured plaintiff received workmen's compensation could subject the tort-feasor to double liability. Apparently alleviation of this condition was the purpose for the 1959 Amendment which added subsection (3) (b) to read:
"If the employer or insurance carrier has given written notice of his rights of subrogation to the third tort-feasor, and, thereafter, settlement of any such claim or action at law is made, either before or after suit is filed, and the parties fail to agree on the proportion to be paid to each, the circuit court of the county in which the cause of action arose shall determine the amount to be paid to each by such third party tort-feasor in accordance with the provisions of paragraph (a) above."
Thus, the whole question here is whether the addition of the above paragraph would allow the carrier to sit back knowing that the employee had instituted suit against the third party without filing in that suit notice of payment of compensation, without serving such notice on the parties, and without applying for pro rata distribution of the proceeds. We think not. We find that in order for such a carrier to protect its subrogation rights where it has actual knowledge that suit has been filed by the injured employee, and is later settled and that settlement approved by the court, the carrier's subrogation rights are those set forth in subsection 440.39(3) (a).
It has been held that the court order making effective the settlement constituted such a recovery as to be within the purview of subsection 440.39(3) (a),[6] so we conclude that subparagraph (b) is designed to protect the employer or his carrier only in those situations where they are not fully protected under subparagraph (a). We *540 are not here concerned with any claim which may exist between the carrier and the employee. Under the facts in this case, the carrier failed to preserve its subrogation rights and therefore the judgment appealed is
Affirmed.
CARROLL, DONALD K., and JOHNSON, JJ., concur.
NOTES
[1] Dickerson v. Orange State Oil Company, 123 So.2d 562 (Fla.App.2d, 1960); Russell v. Shelby Mutual Insurance Company, 128 So.2d 161 (Fla.App.3d, 1961); and Dade County v. Michigan Mutual Liability Company, 130 So.2d 111 (Fla.App.3d, 1961).
[2] Fidelity & Cas. Co. of New York v. Bedingfield, 60 So.2d 489 (Fla. 1952).
[3] Sweat v. Allen, 145 Fla. 733, 200 So. 348 (1941).
[4] Dickerson v. Orange State Oil Company, 123 So.2d 562 (Fla.App.2d 1960).
[5] Dade County v. Michigan Mutual Liability Company, 130 So.2d 111 (Fla.App. 3d, 1961).
[6] United States Casualty Co. v. Hume, 112 So.2d 49 (Fla.App.2d 1959).